WARD, Judge.
Edward Shelton, husband and father of plaintiffs, died on November 20, 1974, from burn injuries which he had received on November 7, 1974, while he was employed by Texaco Company, Inc. After the death of Mr. Shelton, his widow and two adult children filed this executive officer suit against Allen Neal, who was Shelton’s immediate supervisor at Texaco, and Woodrow Morgan, who was later dismissed from the suit. The accident occurred before the effective date of Act 144 of 1976 which immunized executive officers from claims for negligence of fellow employees.
The suit was filed November 20, 1975, and trial was before the Judge on December 9,1981. On January 28, 1982, the Trial Court rendered a judgment against the plaintiffs, finding both that Mr. Neal had not been negligent and that Mr. Shelton had been contributorily negligent. Plaintiffs appeal from that adverse judgment. The third-party intervenors, Texaco Company, Inc. and American Motorist Insurance Company, who have paid workers’ compensation benefits to Shelton’s wife, have intervened to recover workers’ compensation payments in the event plaintiffs are successful, and they have joined in the appeal by adopting the plaintiffs’ arguments.
The trial record shows that at the time of this unfortunate accident, Mr. Shelton was 50 years old and he had been employed by Texaco Co., Inc. for more than 28 years. The record also shows that shortly before the accident, in October, 1973, Mr. Shelton had been transferred from a gas processing plant at Paradis to the gas processing plant at Venice. Mr. Shelton had worked at Par-adis, which is a much larger plant than the one at Venice, for 19 years, and he worked as a stillman before his transfer to Venice where he was also employed as a stillman. There were only a handful of other employees at the modern, highly automated Venice plant, among whom were Allen Neal, a mechanical engineer and plant supervisor, and Lee LeCompte, a roustabout.
Two days before the accident, the plant had been closed for compressor repairs, and Mr. Neal had been working non-stop to get the plant back into operation. On the day of the accident, November 7,1974, Mr. Shelton had come to work early in the morning, and he and Mr. Neal began restoring plant operations which they had completed by 12:30 p.m. that day. Satisfied that the plant was back on production, Mr. Neal left the plant, leaving Mr. Shelton in charge. At that time, there were no problems with the plant operation; everything was working properly.
Little is known, but nothing unusual was reported about the plant activities on that day until 4:30 in the afternoon. At that time, it became apparent that all was not well when Mr. Shelton spoke with the roustabout, Mr. LeCompte, and explained that he was getting a wrench to close a wheel valve on a still. Apparently, Mr. Shelton had opened the valve, and because of high pressure in the still, he could not close the valve without using a wrench. When he used the wrench, metal striking *785 metal caused a spark which ignited gas escaping from the valve, and there was an explosion and fire. Although Mr. Shelton was severely burned, with the help of Mr. LeCompte, he managed to get away from the blaze at the still, but unfortunately, death followed while he was being treated in the Charity Hospital Burn Unit in New Orleans.
In this appeal, the plaintiffs argue that the Trial Judge erred when he found: (1) that Neal was not negligent because he had not breached his duty as a supervisor to Shelton; (2) that Shelton was contributorily negligent because his conduct was below the standard of conduct of a reasonable man; and (3) that Neal, the plant supervisor, was not strictly liable in damages as the custodian of a defective thing. Nevertheless, we believe the only issues in this appeal are whether the plaintiffs have proved that Mr. Neal was negligent in his duties, and, if they did, whether defendants have proved that Mr. Shelton was contribu-torily negligent. We do not believe plaintiffs’ third allegation, that Mr. Neal is strictly liable for damages as custodian of a defective thing, warrants more than a brief observation: there is no evidence whatsoever that either the still, valve or plant at Venice was defective.
Turning now to the question of whether Neal was negligent, the plaintiffs must prove by a preponderance of the evidence that Neal has breached his duty to Shelton and that the breach was the cause of the injury and Mr. Shelton’s death. Canter v. Koehring Company, 283 So.2d 716 (La.1973) and restated in Parker v. Travelers Insurance Company, 400 So.2d 682, (La. App. 4th Cir.1981), writ denied, 406 So.2d 590 (La.1981).
Plaintiffs rely on several theories to prove that Neal was negligent. First, plaintiffs claim that Texaco Co., Inc. had delegated its duty to Mr. Neal to provide a safe work place for Mr. Shelton, and they claim that Mr. Neal failed in his duty by allowing a dangerous condition to exist at the Venice gas plant. The dangerous condition which they allege is the still.
The still is a large cylinder, approximately six feet in diameter and 100 feet high, which heats liquids to greater than 500 degrees to separate oil from gas. It has an atmospheric drain system controlled by a wheel valve. That valve, the valve that Mr. Shelton was attempting to close, was not designed to operate under pressure, but was designed to permit the drainage of sump through a gravitational flow into a bar pit where it was burned. When the valve is opened, the sump flows from the drainage pipe into a funnel six inches below the end of the pipe. If the valve were opened when the system is operating, gaseous hydrocarbons would escape from the end of the pipe creating a dangerous situation. Hence, the valve is never to be opened during operations. The valve is not hydraulically or automatically opened or closed; it is ordinarily opened and closed manually by the use of the wheel handle attached to it. There are, however, other valves which are automatic and which control the flow of oil and gas when it is under pressure in the still. An instrument panel indicates various levels and pressure of the hydrocarbons, and there is an automatic cut-off device in case trouble develops in the system.
The defendants argue that the plant had been operating for more than six years without an accident and that following the accident, OSHA found no fault at the plant during its investigation.
The Trial Judge held for the defendant Neal, finding that plaintiffs failed to prove that Neal did not provide a safe place to work or that he was negligent. Even if we did not agree with the Trial Judge’s finding of fact, we are not at liberty to substitute our findings for his. There is sufficient evidence in the record to support his finding, and it is not manifestly erroneous.
Plaintiffs also claim that Mr. Neal was negligent because he failed to warn the employees of the dangers of this valve either by oral information, by signs or by the plant’s operation manual.
The record shows that Mr. Neal lived near the plant and was on 24-hour call to *786 answer any calls of inquiry or trouble from the plant employees. Although he did not specifically instruct Shelton about that particular valve, he conducted monthly safety meetings, provided orientation and instructions to new employees, and furnished them an operations manual. Furthermore, when Mr. Shelton was transferred to Venice, he was instructed and trained by the outgoing supervisor whom he was replacing, and at the time of his accident, he was both an experienced stillman and plant supervisor. In addition to all of this, there is evidence that Shelton was warned of and knew of the danger. Although his transfer to Venice was fairly recent, the plant at Paradis which he had left was a larger plant operation, and according to the testimony of his brother-in-law who had also worked at Par-adis for a year, it contained both a closed and similar open drain system. He testified, just as Mr. Neal did, that the valve on an open drain system was not to be used during plant operation because of the high temperatures; the men at Paradis were instructed not to use that valve because of the danger of fire.
In summary, Shelton was not only an experienced employee, he was an experienced stillman. Moreover, his experience and training qualified him to take Neal’s place as a supervisor in Neal’s absence. Shelton had been instructed while at Para-dis how to safely operate the still, and particularly not to open the drain valve while it was in operation. It would be unreasonable to impose a duty on Neal to again instruct or warn him about something so elemental — do not open a drain valve when the still is in operation. Nor do we believe that Neal had a duty to plaster signs over the hundreds of valves present in the plant, they are all dangerous if misused.
The Trial Judge found that Mr. Neal had been dedicated and conscientious in his supervision of operations in the plant and that the plaintiffs had not proved him to be negligent in his duties by failing to warn Shelton of the dangers of misuse of a valve. Again, even if we disagreed with that finding, we cannot merely substitute our judgment for his. Our review on appeal is limited to a determination of whether that finding of fact is clearly wrong. Plaintiffs have not shown that it was.
In addition to all of this, the Trial Judge found that Mr. Shelton was proven to be contributorily negligent. The record supports his finding. First, manually operated wheel valves are designed so that they may be opened or closed by turning the wheel by hand, not with a wrench. Second, pressure on the valve causing difficulty in either opening or closing would have indicated to any experienced stillman that the still was operating and that the valve should not be opened.
In his Reasons for Judgment, the Trial Judge stated that:
“[I]t is inconceivable that a man who had been employed for 19 years in the operation of a gas plant and held the position of plant supervisor would not know and completely understand that the valve at the bottom of the still was for maintenance work only and should only be opened when the plant was not in operation and the still had been allowed to cool down.”
We can only conclude, as the Trial Court did, that Mr. Shelton “failed to act as a reasonable and prudent man and that his negligence was a contributing cause of the accident.” Parker, supra.
Again, the standard of review in this court is to determine if the Trial Judge’s findings of fact are manifestly erroneous. We believe his findings are supported by the record.
We affirm. All cost of trial and appeal are to be paid by plaintiffs.